IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 09-496-08 |
| v. | : | |
| | : | |
| DAMION CANALICHIO | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                          July 8, 2013

I. **BACKGROUND**

This matter arose from Damion Canalichio's participation in the affairs of a racketeering enterprise, the Philadelphia La Cosa Nostra (LCN) Family, from 1999 to 2012. He was charged by Third Superseding Indictment as follows:

> **COUNT 1**—RICO conspiracy in violation of 18 U.S.C. § 1962(d);
>
> **COUNT 47**—Illegal electronic gambling device business in violation of 18 U.S.C. §§ 1955 and 2; and
>
> **COUNT 49**—Illegal sports bookmaking business in violation of 18 U.S.C. §§ 1955(b) and 2.

On May 4, 2012, Defendant pleaded not guilty to all counts. On February 5, 2013, following a three-month trial with six other defendants, a jury returned a verdict convicting Defendant of Count 1 but acquitting on Counts 47 and 49. Defendant now moves for a judgment of acquittal under Rule 29 of

the Federal Rules of Criminal Procedure and, alternatively, a new trial under Rule 33.

**II.  POST-VERDICT MOTIONS**

Defendant renews his motion for judgment of acquittal pursuant to Rule 29 that he first raised at the conclusion of the Government's case at trial. He again argues that the evidence against him was insufficient to sustain a conviction for RICO conspiracy. He also brings a motion for a new trial pursuant to Rule 33, arguing that the Court erroneously declined to excuse two jurors who had been exposed to extraneous information. For the following reasons, Defendant's motions will be denied.

A.  <u>Legal Standards of Review</u>

In resolving a motion for a judgment of acquittal under Rule 29, the Court views the evidence introduced at trial in the light most favorable to the Government and upholds the jury's verdict so long as any rational trier of fact "'could have found proof of guilt beyond a reasonable doubt based on the available evidence.'" <u>United States v. Claxton</u>, 685 F.3d 300, 305 (3d Cir. 2012) (quoting <u>United States v. Brodie</u>, 403 F.3d 123, 133 (3d Cir. 2005)). The Court is required to "afford great deference to, and draw all reasonable inferences in favor of, the jury's verdict." <u>United States v. Piekarsky</u>, 687 F.3d 134,

146 (3d Cir. 2012) (quoting United States v. Riley, 621 F.3d 312, 329 (3d Cir. 2010)). The Court may not "usurp the role of the jury" by weighing the evidence or assessing the credibility of witnesses. United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005) (citing United States v. Jannotti, 673 F.2d 578, 581 (3d Cir. 1982) (en banc); 2A Charles Alan Wright, Peter J. Henning & Sarah N. Welling, Federal Practice & Procedure (Criminal) §467, at 311 (4th ed. 2013)). Thus, the defendant bears an "extremely high" burden when challenging the sufficiency of the evidence supporting a jury verdict, United States v. Iglesias, 535 F.3d 150, 155 (3d Cir. 2008) (internal marks omitted) (quoting United States v. Lore, 430 F.3d 190, 203-04 (3d Cir. 2005)), and the Government "may defeat a sufficiency-of-the-evidence challenge on circumstantial evidence alone." Id. at 156 (citing United States v. Bobb, 471 F.3d 491, 494 (3d Cir. 2006)). A finding of insufficiency should therefore "'be confined to cases where the prosecution's failure is clear.'" Smith, 294 F.3d at 477 (quoting United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984)).

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, the Court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence

3

favorably to the Government, but instead exercises its own judgment in assessing the Government's case." United States v. Silveus, 542 F.3d 993, 1004 (3d Cir. 2008) (quoting United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002). This standard is broader than that for a motion for acquittal under Rule 29; however, a district court may, in its discretion, "order a new trial 'only if it finds that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" Silveus, 542 F.3d at 1004-05 (quoting Johnson, 302 F.3d at 150). Where multiple errors are alleged, a new trial may be granted only where the errors, "'when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" United States v. Hoffecker, 530 F.3d 137, 168 (3d Cir. 2008) (quoting United States v. Copple, 24 F.3d 535, 547 n.17 (3d Cir. 1994)). Consequently, harmless errors that do not deprive the defendant of a fair trial are not a basis for granting a defendant's Rule 33 motion. See Copple, 24 F.3d at 547.

    A.    <u>Renewed Motion for Judgment of Acquittal Under Rule 29</u>

Defendant contends that the evidence was insufficient to support his conviction of RICO conspiracy. But the facts established at trial and a review of the relevant case law

4

satisfy the Court that the evidence supports Defendant's conviction.

B.  Motion for New Trial Under Rule 33

Defendant contends that a new trial should be ordered based on the Court's "erroneous" decision in declining to excuse two jurors who had been exposed to extraneous information and who could no longer be fair and impartial. Specifically, during jury deliberations, Juror Number 9 made a comment that, five years ago, she heard from a friend that defense witness Jerry Davis was "not a good honest person." Trial Tr. 3:12-16, Jan. 17, 2013, ECF No. 1289. She promptly self-reported to the Court that she had shared this information with other jurors. See id. at 3:7-5:15. The Court ordered deliberations to stop and proceeded to question the jurors individually.[1] After conducting an individual voir dire of each juror, the Court excused Juror Number 9. The Court also denied the defendants' motion to excuse Juror Numbers 2 and 5 and denied the motion for a mistrial.

Defendant argues that the Court should have excused Juror Numbers 2 and 5 because the information "severely

---

[1] Prior to questioning the jurors, the Court stated to counsel how it intended to proceed and the questions it proposed to ask of the jurors. Counsel agreed that the procedure was proper and the questions were the appropriate ones to ask. See Trial Tr. 13:18-15:12, Jan. 17, 2013, ECF No. 1289; Trial Tr. 3:2-5:3, Jan. 17, 2013, ECF No. 1290.

undermined a [sic] government's key witness," the jurors "expressed very serious concerns" whether they could disregard the extraneous information, and their statements to the Court ultimately affirming their impartiality "cannot be believed." Def.'s Post-Verdict Mot. ¶¶ 42-43. As discussed below, this argument fails.

Whether to grant a mistrial on the basis of juror exposure to extraneous information is within the Court's discretion. United States v. Urban, 404 F.3d 754, 777 (3d Cir. 2005). "A new trial is warranted if the defendant likely suffered 'substantial prejudice' as a result of the jury's exposure to the extraneous information." United States v. Fumo, 655 F.3d 288, 304 (3d Cir. 2011) (quoting Urban, 404 F.3d at 777). The party seeking a new trial bears the burden of demonstrating a likelihood of prejudice.

The Third Circuit has explained the proper procedure for determining whether extra-judicial information adversely affected the jury: "First, a court determines whether the [information] is prejudicial. Second, if it is, the court determines whether any jurors were exposed to the coverage. Third, if exposure did occur, the court examines the exposed jurors to determine if this exposure compromised their impartiality." Waldorf v. Shuta, 3 F.3d 705, 709-10 (3d Cir.

6

1993) (citing United States v. Jackson, 649 F.2d 967, 976 (3d Cir. 1981)).

"In examining for prejudice, [a court] must conduct an objective analysis by considering the probable effect of the allegedly prejudicial information on a hypothetical average juror." Fumo, 655 F.3d at 304 (quoting Urban, 404 F.3d at 777).[2] Once prejudice has been tentatively identified, "'[i]f there is reason to believe that jurors have been exposed to prejudicial information, the trial judge is obliged to investigate the effect of that exposure on the outcome of the trial.'" Id. (quoting United States v. Console, 13 F.3d 641, 669 (3d Cir. 1993)). The Court must determine whether "the allegedly prejudicial information influenced the jury 'when it deliberated and delivered its verdict'" because the relevant issue is the information's impact on the verdict and not the "information in the abstract." Urban, 404 F.3d at 777 (emphasis added) (quoting United States v. Gilsenan, 949 F.2d 90, 95 (3d Cir. 1991)).

---

[2] The objective analysis serves as a safeguard in preventing the Court from "inquir[ing] into [the] jury's deliberative process." See Wilson v. Vermont Castings, Inc., 170 F.3d 391, 394 (3d Cir. 1999) (citing United States v. Jonnet, 762 F.2d 16, 20 (3d Cir. 1985)). Of course, under Rule 606(b)(1) of the Federal Rules of Evidence, it is not permitted for the Court to inquire into a juror's mental processes concerning deliberation. In this case, the Court limited its inquiry to questions about whether "extraneous prejudicial information was improperly brought to the jury's attention," a matter about which a juror is permitted to testify under Rule 606(b)(2)(A).

7

In determining whether extra-judicial information substantially prejudiced the jury, the Court should consider:

> (1) [Whether] the extraneous information . . . relates to one of the elements of the case that was decided against the party moving for a new trial; (2) the extent of the jury's exposure to the extraneous information; (3) the time at which the jury receives the extraneous information; (4) the length of the jury's deliberations and the structure of the verdict; (5) the existence of instructions from the court that the jury should consider only evidence developed in the case; and (6) whether there is a heavy volume of incriminating evidence.

Fumo, 655 F.3d at 307 (citations and internal punctuation omitted).

Here, the Court closely followed the Third Circuit's guidance. First, as a precaution, it presumed that the information shared by Juror Number 9 with the other jurors concerning a defense witness was potentially prejudicial. See Trial Tr. 3:2-5:3, Jan. 17, 2013, ECF No. 1290. This satisfied step one of the three-step procedure espoused by the Third Circuit in Waldorf for dealing with the jury's exposure to extraneous information. The Court then determined that the jurors were in fact exposed to the extraneous information. This satisfied step two.

The Court also conducted a thorough, individualized voir dire of each of the jurors, questioning each juror as to whether that juror could set aside the extraneous information, follow the Court's legal instructions, and decide the case

8

solely on the law and evidence presented at trial. The Court further asked each juror whether the extraneous information compromised the juror's ability to be fair and impartial. Finally, the Court asked each juror if he or she could in fact be fair and impartial in rendering a verdict. The Court's individualized voir dire of each juror satisfied step three.

At the conclusion of the proceedings, the Court applied the factors in Fumo to determine whether the extraneous information did, in fact, substantially prejudice the jury, and it found:

> [T]he statement by Juror Number 9 did not involve the guilt or innocence of the defendants or for that matter, it did not involve the defendants, at all. The statement by Juror Number 9 was brief, was immediately reported to the Court and deliberations were stopped, so it did not fester or found a basis for further deliberations by the Court. The statement was not [made on] personal knowledge, but was hearsay of [low] informational value. It was made after a three-month trial and five days of deliberation, so it constituted a relatively small piece of a large evidentiary puzzle the jury is considering.

Trial Tr. 3:25-4:10, Jan. 18, 2013, ECF No. 1291.[3] Furthermore, the Court protected against any risk of prejudice by giving the following curative instruction:

> [A]s I discussed with you when we talked in chambers, Juror No. 9 had made a statement or a series of

---

[3] The jury went on to deliberate for a total of 21 days before rendering a unified verdict in which they acquitted one defendant and found another four guilty on some counts but not all. The jury hung as to two defendants.

9

> statements concerning a witness who had testified at the trial and those statements were based on what we call extraneous information, that is information that came from outside what had been presented here in the courtroom. I'm going to instruct you that you are to disregard that statement or statements made by Juror No. 9 and should not discuss them at all during your deliberations. They're not part of the deliberations, should not be considered by you.

Id. at 12:14-23.

Defendant claims that the Court's decision was incorrect because the voir dire of the Juror Numbers 2 and 5 did not disclose that both could remain impartial.[4] But Juror Number 2, after some equivocating on whether he was able to "put out of [his] mind" Juror Number 9's comment on Davis's credibility, clearly confirmed that notwithstanding his exposure to the extraneous information, he could be fair and impartial during deliberation. Trial Tr. 20:4-21:20, Jan. 17, 2013.[5]

Juror Number 5 also provided an unequivocal statement that he could be fair and impartial. After explaining that there was "a good amount of discussion surrounding Jerry Davis," id. at 26:20-21, he told the Court that he could "make every effort

---

[4] The Court's voir dire of Juror Numbers 2 and 5 are attached as Appendices A and B, respectively.

[5] Defendant's argument conflates Juror Number 2's ability to be fair and impartial with his ability to ignore the extraneous information completely. Only the former, i.e., whether the information had an impact on the verdict, see Urban, 404 F.3d at 777, is relevant to the Court's analysis, and Juror Number 2 made clear he was capable of being fair and impartial during deliberations.

to" be fair and impartial and that he did not believe the extraneous information compromised his ability to properly exercise his obligations as a juror, id. at 27:2-10. Although initially he admitted that he could not give "a yes or no answer" as to his impartiality, after further inquiry by the Court, again asking whether the prejudicial information affected him in any way, he clearly stated he could be fair and impartial. Id. at 27:12-28:1.

Defendant challenges the credibility of Juror Numbers 2 and 5 regarding their professions of fairness and impartiality. Def.'s Post-Verdict Mot. ¶ 42. But the day after the voir dire, the Court made a finding "that the professions of fairness and impartiality of Juror Numbers 2 and 5 are credible and genuine," Trial Tr. 4:16-17 (emphasis added), Jan. 18, 2013, and placed the comment at issue in context on the record:

> [T]hat an improper statement was made briefly, is not all that unusual after a three-month trial and five [sic] days of deliberation.
>
> The jurors are lay persons dealing with complex issues, that the other jurors immediately reported the statement made by Juror Number 9 and asked Juror Number 9 to report to the Court I think speaks highly of the conduct of this jury, and that it did not deliberate upon that statement, but immediately reported it to the Court.
>
> For the last three months, they have been here punctually. I have observed their demeanor, they have been taking notes and paying close attention to the testimony. So far as I can see, their conduct has been

11

> commendable and I expect that it will continue to be so.

Id. at 5:7-20. Notably, although Defendant disputes that Juror Numbers 2 and 5 were credible, he points to nothing of record other than his own interpretation of the jurors' answers to the Court's voir dire, which contradicts the Court's finding.

In summary, applying the factors suggested by the Third Circuit in Fumo, the Court conducted individual voir dire of the jurors and made record findings that all of the jurors could be fair and impartial notwithstanding exposure to the extraneous information. The Court also made findings that Juror Numbers 2 and 5 were "credible and genuine" when they testified they could be fair and impartial, and Defendant points to nothing in the record (other than his contention that these professions should not be believed) to contradict this finding. To insure against any prejudicial effect, the Court removed Juror Number 9 (the juror who had injected the extraneous information) and provided an immediate and clear instruction to the jurors to disregard that information. Given the circumstances here, including a multi-defendant case tried over a three-month period involving forty-four witnesses, the Court concludes that the exposure of Juror Numbers 2 and 5 to this limited, extraneous information did not affect their ability to be fair and impartial and therefore did not impact the verdict.

**III. CONCLUSION**

For the foregoing reasons, the Court will deny Defendant's Post-Verdict Motions. An appropriate order will follow.