**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED  STATES  OF  AMERICA | : | |
| | : | **CRIMINAL  ACTION** |
| v. | : | **NO.  09 - 496 - 08** |
| | : | |
| DAMION  CANALICHIO | : | |

**SUPPLEMENT TO THE SUPPLEMENTAL BRIEF IN SUPPORT OF THE**
**DEFENDANT'S MOTION FILED PURSUANT TO 28 U.S.C. § 2255**

The defendant, Damion Canalichio (the "Defendant" or "Mr. Canalichio"), by his

attorney, Henry S. Hilles, III, Esquire ("Counsel"), hereby files the within Supplement

(the "Supplement") to the Supplemental Brief (the "Initial Supplemental Brief") in

Support of the Defendant's Motion Filed Pursuant to 28 U.S.C. § 2255 (the "Section

2255 Motion"). The Initial Supplemental Brief is attached hereto as Exhibit 'A' for ease

of reference.

In the Initial Supplemental Brief, Counsel addressed the issue of the rule of lenity

— the concept of law upon which the Court clearly based its decision regarding the

applicability of the career offender enhancement. Trial Counsel had testified at the

December 15, 2017 evidentiary hearing with respect to the Section 2255 Motion (the

"Section 2255 Hearing") that she did not discuss the rule of lenity doctrine with Mr.

Canalichio prior to trial. N.T., 12/13/2017, p. 52, lines 1-6. Specifically, Trial Counsel

testified that "The rule of lenity was not discussed" and agreed that it did not occur to her

to discuss the rule of lenity with Mr. Canalichio. N.T., 12/13/2017, p. 52, lines 5-6, 18-21.

Indeed, she conceded that she learned of the rule of lenity "sometime after trial for sure"

N.T., 12/13/2017, p. 55, lines 15-19 and confirmed that she did not address the rule of

lenity in her sentencing memorandum. N.T., 12/13/2017, p. 37, lines 15-16. Mr.

Canalichio confirmed that Trial Counsel first discussed the rule of lenity "Right before

sentencing." N.T., 12/13/2017, p. 63, lines 14-18.

During the Section 2255 Hearing, the Court posed the following question of the

attorneys: "Do you know of any other cases in the sentencing world where the rule of

lenity has been applied so it would put the lawyer on notice, oh, this is available. We've

got one in New York. We've got one in Ohio or whether this was a novel, call it that,

approach? And you don't — do you have any cases? Did you look for it?" N.T.,

12/13/2017, pp. 88-90.

Neither Counsel nor the Government immediately cited any such cases. The Court

then queried "Well, certainly by looking at the — by doing the research constructively if

we were to hold [Trial Counsel] to that standard, she wouldn't have found any cases in

which the rule of lenity had been applied, not only in this context or apparently in any

context." N.T., 12/13/2017, p. 90.

Following the Section 2255 Hearing, Counsel submitted the 19-page Initial

Supplemental Brief in which he raised a number of issues in support of the arguments

made during the Section 2255 Hearing. In this Supplement, Counsel specifically

addresses the foregoing questions posed by the Court at the Section 2255 Hearing.

Case law is clear that the rule of lenity is a "background principle" against which

criminal statutes must be interpreted. *United States v. X-Citement Video,* 513 U.S. 64, 71

(1994). Like other tools of statutory construction, the rule of lenity seeks to honor

legislative intent. *See, e.g., Clark v. Martinez*, 543 U.S. 371 (2005), *Scheidler v. National Organization For Women, Inc.*, 537 U.S. 393, 404 n.8 (2003), *Crandon v. United States*, 494 U.S. 152, 158 (1990), *Ladner v. United States*, 358 U.S. 169, 178 (1958). Where a criminal statute is subject to more than one interpretation, "[u]under a long line" of Supreme Court decisions, "the tie must go to the defendant." *United States v. Santos*, 553 U.S. 507, 514 (2008).

The Third Circuit Court of Appeals has acknowledged that the rule of lenity can apply in the context of sentencing proceedings. *United States v. Flemming*, 617 F.3d 252, (3d Cir. 2010). In *Flemming*, the Third Circuit Court was presented with the question of whether the District Court had applied the appropriate guidelines in imposing sentencing. Essentially, the question was whether the defendant should have been sentenced under the Crack Cocaine Guidelines or pursuant to the Career Offender guideline range. The Court concluded that in that specific case (which was applying the pre-2013 version of the Guidelines), there was ambiguity with respect to which guideline range should be applied. *Id* at 256-258.

Accordingly, the Court in *Flemming* applied the rule of lenity, and resolved the ambiguity in the Appellant's favor, with the result that Appellant would have an "applicable guideline range" that was not based on the career offender guidelines making him eligible for a sentencing reduction. *Id* at 266. The Court concluded that while it is "called for only in rare cases", ***the rule of lenity "applies to the Sentencing Guidelines"***. *Id* at 270-272 (citations omitted; emphasis added).

The Third Circuit has concluded in other decisions that the rule of lenity applies in sentencing proceedings. Specifically, the rule of lenity applies "in circumstances in which an ambiguous criminal statute cannot be clarified by its 'text, structure, history, purpose… or reasonable inferences drawn from the overall statutory scheme'" in which cases the Court will "resolve that ambiguity in favor of the defendant." *United States v. Savani,* 733 F.3d 56 (3d Cir. 2013) (citations omitted). *See, also, United States v. Fenton,* 309 F.3d 828, 828 n. 3 (3d. Cir. 2002) ("[W]here … the [Sentencing] Guidelines do not clearly call for enhancement, the rule of lenity should prevent the application of a significantly increased sentence").

As set forth in the Initial Supplemental Brief, the rule of lenity is a "venerable rule" which "requires ambiguous criminal laws to be interpreted in favor of the defendant subject to them." *Santos,* 553 U.S. at 515. It is a "rule of narrow construction" that "is rooted in the concern of the law for individual rights and in the believe that fair warning should be according as to what conduct is criminal and punishable by deprivation of liberty or property". *Huddleston v. United States,* 415 U.S. 814 (1974), *citing, United States v. Wiltberger,* 18 U.S. 76, 105 (1820) ("[P]robability is not a guide which a court, in contouring a penal statue, can safely take.").

As set forth above, this "venerable rule" has been interpreted by the Third Circuit to apply in the criminal sentencing context where there is ambiguity with respect to the applicability of the Guidelines. Given (i) the Third Circuit's recognition of the viability of the rule of lenity with respect to ambiguous sentencing guideline issues, (ii) the differing circuit court opinions with respect to the instant sentencing issue involving the

applicability of the career offender enhancement, and (iii) the fact that the Third Circuit had not rendered a decision on this instant issue, Trial Counsel was constructively on notice that that the Court may apply the rule of lenity and decline to apply the career offender enhancement in this case. At the very least, Trial Counsel should have throughly discussed this "venerable rule" with Mr. Canalichio.

Trial Counsel's failure to discuss the potential applicability of the rule of lenity in connection with the potential applicability of the career offender enhancement resulted in clear prejudice to Mr. Canalichio. Trial Counsel's failure in this regard resulted in Mr. Canalichio being denied the opportunity to make a decision whether to enter into a guilty plea on a fully-informed, knowing and intelligent basis. As established at the Section 2255 Hearing, there is a "reasonable probability" that but for Trial Counsel's ineffectiveness, Mr. Canalichio would have entered a guilty plea and received a sentence involving less prison time. *See, Strickland v. Washington*, 466 U.S. 688, 685-86 (1984).

For the reasons set forth in the Initial Supplemental Brief as supplemented herein, Mr. Canalichio respectfully asserts that at the Section 2255 Hearing, he successfully proved, by a preponderance of the evidence, that Trial Counsel rendered deficient performance by failing to fully and properly advise him with respect to the relevant sentencing guidelines. Trial Counsel's advice to Mr. Canalichio in connection with the career offender enhancement — and her failure to properly advise him with respect to the potential applicability of the rule of lenity — was constitutionally deficient and "was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer." *Day,* 969 F.2d at 43. Instead, Mr. Canalichio was

provided with a false scenario that essentially mandated that he take the matter to trial.

But for Trial Counsel's ineffectiveness in this regard, there is a "reasonable probability"

that Mr. Canalichio would have entered into a guilty plea and received a sentence

involving less prison time. *See, Strickland, supra.*

WHEREFORE, Counsel respectfully requests that the Honorable Court schedule

a new sentencing hearing so that Mr. Canalichio may be sentenced in connection with the

appropriate guideline range that would have applied had he entered a guilty plea prior to

trial.

Respectfully submitted,


/s/ Henry S. Hilles, III
Henry S. Hilles, III, Esquire
Attorney for Defendant Damion Canalichio
Attorney I.D. No. 73968
509 Swede Street
Norristown, PA 19401

# EXHIBIT 'A'

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| **v.** | : | **NO.  09 - 496 - 08** |
| | : | |
| **DAMION  CANALICHIO** | : | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF THE
DEFENDANT'S MOTION FILED PURSUANT TO 28 U.S.C. § 2255**

**I.      BACKGROUND**

On or about February 5, 2013, following a trial by jury before the Honorable

Eduardo C. Robreno, the defendant, Damion Canalichio, was convicted of violating 18

U.S.C. 1962(d), Prohibited Activities ("RICO conspiracy"). On July 16, 2013, at the

conclusion of a sentencing hearing (the "Sentencing Hearing"), Judge Robreno imposed

judgment of sentence of 137 months of imprisonment.

On January 5, 2016, the Third Circuit Court of Appeals affirmed the July 16, 2013

judgment of sentence. On April 10, 2017, Mr. Canalichio timely filed a *pro se* Motion to

Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (the "Motion") in

which he sought relief based on three grounds. Ground Three was entitled "Petitioner's

Counsel was Ineffective by failing to Properly Inform Him of the Option and Benefits of

Entering an Open Plea, and by Grossly Miscalculating His Sentencing Exposure".

By September 6, 2017 Order of the Honorable Eduardo C. Robreno, Counsel was

appointed to represent the Defendant pursuant to the Criminal Justice Act, 18 U.S.C.

Section 3006A.

On December 13, 2017, Judge Robreno presided over an evidentiary hearing (the "Section 2255 Hearing") with respect to Ground Three of the Motion. Trial Counsel offered testimony as did Mr. Canalichio. Following the hearing, counsel for both sides were provided the opportunity to submit supplemental briefs. The instant supplemental brief follows.

## II.    SUMMARY OF ARGUMENT

Mr. Canalichio respectfully asserts that at the Section 2255 Hearing, he successfully proved, by a preponderance of the evidence, that Margaret M. Grasso, Esquire ("Trial Counsel"), who represented him from the relevant pretrial stages through the Sentencing Hearing, provided ineffective assistance of counsel by failing to fully and properly advise him with respect to the applicable sentencing guidelines.

Specifically, Trial Counsel failed to (i) properly analyze whether a conviction for RICO conspiracy would trigger the "career offender" enhancement, (ii) advise Mr. Canalichio of the lack of Supreme Court and Third Circuit precedent —  and an existing split among the circuit courts — with respect to whether the "categorical approach" should be used in analyzing the foregoing career offender enhancement issue, and (iii) advise Mr. Canalichio that the rule of lenity would possibly — or even likely — be applied which would invalidate application of the career offender enhancement in his case. Because of these failings, Mr. Canalichio was unable to make a reasonably informed decision with respect to whether to enter a guilty plea or proceed to trial.

As a result of Trial Counsel's deficient performance, Mr. Canalichio believed (falsely) that he was facing guidelines which started at approximately 210 months (17 1/2 years) of incarceration if he entered a guilty plea. He was aware that the statutory maximum he faced for a RICO conspiracy conviction was 240 months (20 years). Accordingly, Mr. Canalichio naturally concluded that he had essentially "nothing to lose" by going to trial since the applicable guidelines (he thought) started near the legal maximum he could receive anyway if he lost at trial.

In actuality, the career offender enhancement did not apply so that had Mr. Canalichio entered a guilty plea, he would have faced a guideline range that started at 84 months (seven years) with the standard 3-level reduction pursuant to USSG §§ 3E1.1(a) and (b).

Mr. Canalichio was prejudiced by Trial Counsel's ineffectiveness because he was denied the opportunity to properly consider the choices involved in entering a guilty plea versus going to trial. Instead, he was provided with a false scenario that essentially mandated that he take the matter to trial.

The remedy Mr. Canalichio seeks is to have the matter scheduled for a re-sentencing hearing where he may gain the benefit of the sentencing guidelines appropriately adjusted for acceptance of responsibility pursuant to USSG §§ 3E1.1(a) and (b).

### III.   ARGUMENT

**PETITIONER'S COUNSEL WAS INEFFECTIVE BY FAILING TO PROPERLY INFORM HIM OF THE OPTION AND BENEFITS OF ENTERING AN OPEN PLEA AND BY GROSSLY MISCALCULATING HIS SENTENCE EXPOSURE.**

Title 28 U.S.C. § 2255 provides that a prisoner serving a federal sentence may move the sentencing court to "vacate, set aside, or correct the sentence" on the following grounds: "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *Id.* Mr. Canalichio's Third Ground alleges the ineffective assistance of Trial Counsel in violation of his rights pursuant to the Sixth Amendment of the United States Constitution (i.e., the first clause of Section 2255).

The Sixth Amendment guarantees defendants "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 688, 685-86 (1984). In *Strickland*, the Supreme Court established a two-prong test for evaluating when assistance of counsel is to be deemed ineffective. *Id.* at 687. To demonstrate ineffectiveness of counsel, a petitioner must prove that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Id.* Counsel's performance qualifies as deficient if it "fell below an objective standard of reasonableness." *Id.* at 688. A Section 2255 petitioner suffers prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

*Strickland* involved a claim of ineffective assistance that arose in the context of a trial, but the Court's two-pronged test has been extended to the plea process. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). Accordingly, a petitioner can satisfy the first part of the *Strickland* test by demonstrating that counsel's advice regarding a proposed plea agreement "was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer." *United States v. Day,* 969 F.2d 39, 43 (3d Cir. 1992).

To satisfy the second prong of *Strickland* — prejudice — a defendant who pleads guilty "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court …, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper,* 133 S.Ct. 1376, 1385 (2012).

## A.    FIRST *STRICKLAND* PRONG — DEFICIENT PERFORMANCE

The Sixth Amendment right to the "effective assistance of competent counsel" extends to pretrial stages including the plea bargaining process. *Lafler v. Cooper,* 133 S.Ct. 1376 (2012); *Missouri v. Frye,* 132 S.Ct. 1399 (2012). Claims of ineffective assistance of counsel in the plea discussion context are governed by *Strickland*'s two-prong test. *Lafler,* 132 S.Ct. at 1384; *Frye,* 132 S.Ct. at 1405. With respect to a claim that

counsel was ineffective with respect to plea discussions, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S.Ct. at 1384.

Counsel can be ineffective for failing to advise of the possibility of entering an open plea which would have ultimately reduced a defendant's sentence. *United States v. Booth,* 432 F.3d 542, 549 (3d Cir. 2005); *see, also, United States v. Day,* 969 F.2d 39, 43 (3d Cir. 1992) ("a defendant has the right to make a reasonably informed decision whether to accept a plea offer"). To be effective, counsel must have "[f]amiliarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status)." *Day,* 969 F.3d at 43.

A petitioner in a Section 2255 preceding has the burden of demonstrating his right to relief "by a preponderance of the evidence." *See*, *e.g*., *Langston v. United States,* 105 F. Supp. 2d. 419, 422 (E.D. pa. 2000); *see also, United States v. Baynes,* 622 F.2d 66, 69 (3d Cir. 1980) ("The defendant bears the burden of proof to demonstrate ineffective assistance of counsel.").

After Mr. Canalichio filed his Motion, Judge Robreno scheduled the Section 2255 Hearing to determine whether Trial Counsel provided ineffective assistance of counsel in advising Mr. Canalichio during pretrial plea discussions. The specific analysis, under *Strickland,* is whether (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense".

The underlying issue with respect to Ground Three was the applicability to Mr. Canalichio of the career offender guideline, USSG §§ 4B1.1 and (2). The specific

question was whether a conviction for RICO conspiracy constitutes a crime of violence to trigger the enhancement under the career offender provision.

The career offender enhancement refers to the Sentencing Guidelines' application of an increased offense level and increased criminal history category when (1) a defendant is at least 18 years of age at the time of the offense, (2) the offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions for times of violence or controlled substance offenses. USSG § 4B1.1. Application of the career offender enhancement would have increased the offense level by six points. (Pre-sentence Investigation Report ("PSR"), paragraph 151).

At the Sentencing Hearing, counsel for the Government and Trial Counsel agreed that the Third Circuit had not addressed the specific question of whether a RICO conspiracy conviction triggers the career offender enhancement. N.T., 7/26/2013, p. 25, lines 11-15. Both counsel agreed that other circuit courts had split on the question of whether the categorical approach should be used for determining whether an offense (i.e., RICO conspiracy) was a "crime of violence" as contemplated by USSG § 4B1.1. N.T., 7/26/2013, p. 25, 26-27.[1]

The Court ultimately concluded that "given the absence of Supreme Court or Third Circuit precedent on these points and invoking the rule of lenity under which courts

---

[1] The "categorical approach" refers to the concept that sentencing courts should "look onto the statutory definitions" — i.e., the elements — of a defendant's offenses and not "to the particular facts underlying those convictions." *Taylor v. United States,* 495 U.S. 575, 600 (1990). *Taylor* is not controlling here because the Court in that case applied the categorical approach in the context of the Armed Career Criminal Act and not the career offender enhancement.

construe any ambiguity in favor of the defendant, the Court will decline to apply the career offender enhancement in this case." N.T., 7/26/2013, p. 53.

At the Section 2255 hearing, Trial Counsel testified along with Mr. Canalichio. With respect to plea discussions, Trial Counsel testified that Mr. Canalichio was interested in possibly pleading guilty. N.T., 12/13/2017, p. 34, lines 11-13. Indeed, Trial Counsel testified that "if there was a stipulation that [Mr. Canalichio] was not a career offender … I believe he would have considered [a guilty plea]". N.T., 12/13/2017, p. 34, lines 14-18.

Trial Counsel also was questioned with respect to pretrial email communications with Mr. Canalichio. She acknowledged receiving an email from Mr. Canalichio (dated 9/12/2011) which reads as follows: "Can you find out what they are offering for a plea bargain? How much time I am looking at with and without the plea? Look forward to hearing from you. If they are talking career roll your sleeves up and get ready for a fight." Govt. Ex. 7, page 2 (9/12/2011 email); N.T., 12/13/2017, p. 45, line 25 — page 46, line 21.

Accordingly, there can be no doubt that Mr. Canalichio was interested in the possibility of pleading guilty. This is not a case where a defendant made it clear to counsel that he would never entertain a guilty plea.

In a later email (dated 9/19/2013), Trial Counsel informed Mr. Canalichio that "Unfortunately, in this case, my own review of the guidelines has you as a career offender." Govt. Ex. 7, page 5; N.T., 12/13/2017, p. 48, lines 6-16.

Trial Counsel testified that she discussed the career offender enhancement with Mr. Canalichio and informed him that the final decision with respect to that and all sentencing matters is up to the Court. N.T., 12/13/2017, p. 48, lines 13-16. However she did not maintain work product notes or otherwise memorialize the substance of these conversations. N.T., 12/13/2017, p. 30, lines 4-22.

A critical issue at the Section 2255 Hearing was whether Trial Counsel fully and properly advised Mr. Canalichio with respect to whether a conviction for RICO conspiracy triggers the career offender enhancement. The testimony at the Section 2255 Hearing makes it clear that Trial Counsel did not adequately address this issue with Mr. Canalichio.

Trial Counsel testified that "I don't think we ever discussed specifically the categorical approach" although "I would have talked about it to him generally." N.T., 12/13/2017, p. 50, lines 5-6, 15. She admitted that she did not discuss the fact that the circuits had split on the issue of whether to apply the categorical approach to analyzing whether a RICO conspiracy triggers the career offender enhancement. N.T., 12/13/2017, p. 50, line 16 - p. 51, line 3. When asked whether she discussed this with Mr. Canalichio, she testified "I don't think so" N.T., 12/13/2017, p. 51, lines 4-6 and "Did I ever discuss this with him back then? No." N.T., 12/13/2017, p. 54, lines 2-14.

With respect to the rule of lenity — the concept of law upon which the Court clearly based its decision regarding the applicability of the career offender enhancement — Trial Counsel testified that she did not discuss this doctrine with Mr. Canalichio prior to trial. N.T., 12/13/2017, p. 52, lines 1-6. Specifically, Trial Counsel testified that "The

rule of lenity was not discussed" and agreed that it did not occur to her to discuss the rule of lenity with Mr. Canalichio. N.T., 12/13/2017, p. 52, lines 5-6, 18-21. Indeed, she conceded that she learned of the rule of lenity "sometime after trial for sure" N.T., 12/13/2017, p. 55, lines 15-19 and confirmed that she did not address the rule of lenity in her sentencing memorandum. N.T., 12/13/2017, p. 37, lines 15-16. Mr. Canalichio confirmed that Trial Counsel first discussed the rule of lenity "Right before sentencing." N.T., 12/13/2017, p. 63, lines 14-18.

The rule of lenity is not a silly sentimentality or an arcane concept. Rather, it is a "venerable rule" which "requires ambiguous criminal laws to be interpreted in favor of the defendant subject to them." *United States v. Santos,* 553 U.S. 507, 515 (2008). It is a "rule of narrow construction" that "is rooted in the concern of the law for individual rights and in the believe that fair warning should be according as to what conduct is criminal and punishable by deprivation of liberty or property". *Huddleston v. United States,* 415 U.S. 814 (1974), *citing, United States v. Wiltberger,* 18 U.S. 76, 105 ("[P]robability is not a guide which a court, in contouring a penal statue, can safely take.").

Given the differing circuit court opinions — and the fact that the Third Circuit had not rendered a decision on the subject — it should have been clear to Trial Counsel that the Court in the instant case may apply the rule of lenity and decline to apply the career offender enhancement. Certainly this is something that Trial Counsel should have thoroughly discussed with Mr. Canalichio. Indeed, for Mr. Canalichio to make an informed decision with respect to whether to plead guilty or proceed to trial, he

absolutely should have been made aware of the legal issues surrounding the applicability of the career offender enhancement.

This is especially true given Mr. Canalichio's detailed questions regarding the career offender enhancement as set forth in his email communications to Trial Counsel. Mr. Canalichio generated emails in which he states the following:

- "I've done some research on my own [regarding the career offender enhancement but] im no lawyer so id appreciate it if you could pick up the investigation where i left off. If you find im correct or otherwise could you send me the paperwork to substantiate." Govt. Ex. 7, pp. 1-2 (9/15/2011 email);

- "I was checking in the law library and i don't see they can career me with my previous record. Am I missing something? I know you have just started working on this but where do you think we stand?". Govt. Ex. 7, p. 2 (9/13/2011 email);

- "Can you find out what they are offering for a plea bargain? How much time I am looking at with and without the plea? Looking forward to hearing from you. If they are talking career roll your sleeves up and get ready for a fight." Govt. Ex. 7, p. 2 (9/12/2011 email)

- "Sorry to hear you think I qualify for a career offender. Are they going to pursue this?" Govt. Ex. 7, p. 2 (9/12/2011 email); and

- "also after you speak with [the prosecutor] frank labor please let me know about the career status. right now im in limbo about the fight." Govt. Ex. 7, p. 3 (9/8/2011 email).

Clearly, Mr. Canalichio was very curious about the applicability of the career offender enhancement and requested a detailed analysis to "substantiate" whether the enhancement applied. Trial Counsel was deficient in failing to provide Mr. Canalichio with a correct and detailed answer to this question.

One has to wonder, upon a review of the record, whether Trial Counsel sufficiently understood the applicability of the career offender enhancement to Mr. Canalichio's cases. It seems clear that Trial Counsel did not discuss with Mr. Canalichio (i) the categorical approach to the determination of the applicability of the career offender enhancement, (ii) the circuit split on the issue, (iii) the lack of precedent from the Supreme Court and the Third Circuit, (iv) the rule of lenity and its potential applicability with respect to this issue.

Case law is clear that familiarity with the career offender guideline "has become a necessity for counsel who seek to give effective representation." *Day,* 969 F.3d at 43. In *Day,* the defendant was a statutory career offender although he had not been so informed by trial counsel. In his Section 2255 petition, the defendant asserted that he had declined a plea bargain involving a five-year sentence of incarceration period and proceeded to trial believing that, if he lost, he would receive a sentence of no more than 11 years. At sentencing, the court determined that the defendant was a career offender and imposed a sentence of 22 years. The defendant claimed that he has received ineffective assistance of counsel because he was not adequately advised of his actual sentencing exposure as a career offender. *Id.*

The Third Circuit held that the defendant was entitled to an evidentiary hearing, reasoning that "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation." *Id.* Recognizing the reality of the plea bargaining process, the court concluded that "[k]nowledge of the

comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Id.*

The assertions in the instant case are analogous to *Day* even though the asserted inaccurate advice was opposite. In *Day,* counsel was alleged to have failed to properly advise that the defendant *would* be considered a career offender. In the instant case, Trial Counsel failed to properly advise Mr. Canalichio that he *would not* be considered a career offender. However the end result was starkly similar. Like the defendant asserted in *Day,* Mr. Canalichio was denied the benefit of having sufficient "knowledge of the comparative sentence exposure between standing trial and accepting a plea offer". *Id.* And, as a direct result of this inaccurate information, the defendants in both cases were prejudiced by receiving longer sentences than likely would have been imposed had they been properly and effectively advised.

It is clear that Trial Counsel lacked the level of familiarity with the career offender statute to properly advise Mr. Canalichio in this case. In this regard, Trial Counsel's performance was deficient and left Mr. Canalichio without the ability to "make a reasonably informed decision whether to accept a plea offer" as contemplated by *Day, supra.*

**B.       SECOND *STRICKLAND* PRONG — PREJUDICE**

Having demonstrated the first prong of the *Strickland* analysis — i.e. whether "counsel's performance was deficient" — we must turn to the second prong: whether "the deficient performance prejudiced the defense." *Id., supra.*

Mr. Canalichio was absolutely prejudiced by Trial Counsel's incorrect advice concerning the applicability of the career offender enhancement. Mr. Canalichio's situation is factually analogous to a case before this Honorable District Court, *United States v. Cobb*, 110 F. Supp. 3d 591 (E.D. PA 2014).

In *Cobb*, the defendant was sentenced to 288 months following a jury conviction on drug charges. After a hearing in connection with a Section 2255 petition, the Court found that counsel incorrectly advised Cobb that he met the statutory criteria to be considered a career offender (when, in fact, he did *not* meet the statutory criteria and was *not* a career offender). By so doing, counsel "offered ineffective assistance of counsel by dramatically miscalculating [Cobb's] sentencing exposure." *Id.* at 597. That is, Cobb believed (based on counsel's advice) that his sentencing exposure, upon conviction, would be far *greater* upon conviction then it actually was.

The Court in *Cobb* found that counsel's performance was deficient and focused on the second prong of *Strickland* — that is, was Cobb prejudiced by counsel's ineffectiveness.

The Court in *Cobb* first posed the question "can an individual be prejudiced by the mistaken belief that his sentencing exposure was higher than in reality?" The Court concluded that "Under the circumstances of this case, the answer is yes." *Id.* at 598.

The Court reasoned that "While it is true that a defendant who believes he will receive a sentence of at least 360 months but is actually exposed to no more than 162 is in a far better position then he believes, that misinformation may nonetheless impact the decisions he makes about whether to plead guilty or proceed to trial." *Id.* The Court

referenced *Day, supra,* in reasoning that it is the "comparative sentence exposure" that "makes the difference" and concluded that "either way, that [incorrect] belief may cause him to make a decision he would not have made otherwise that ultimately places him in a worse position than the alternative." *Id.*

The Court concluded that "Under these circumstances, it is not difficult to understand why Petitioner — or another defendant in this situation — might have believed he had little to lose by proceeding to trial."  *Id.* at 598-599.

In the instant case, Mr. Canalichio was positioned similarly to the defendant in *Cobb.* Like with Cobb, Mr. Canalichio was led to believe that he faced significantly greater guidelines than those actually imposed and concluded that "he had little to lose by proceeding to trial." *Id.* Like the defendant in *Cobb,* Mr. Canalichio actually *did* have a lot to lose by proceeding to trial and ultimately faced higher guidelines as a result. Accordingly, like the defendant in *Cobb,* Mr. Canalichio was prejudiced by Trial Counsel's advice with respect to the career offender enhancement.

 To further satisfy the second prong of *Strickland,* a defendant who pleads guilty "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court …, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper,* 133 S.Ct. 1376, 1385 (2012).

At the Section 2255 Hearing, Mr. Canalichio testified that if he had known that the career offender enhancement would not apply "I would have pled out." N.T.,

12/13/2017, p. 62, lines 4-10. Indeed, Mr. Canalichio testified that had Trial Counsel explained the rule of lenity to him as applicable to this issue, "I definitely would have took my chance with the rule of lenity with a guilty plea than going to trial." N.T., 12/13/2017, p. 64, lines 8-11.

Mr. Canalichio did *not* enter a plea because he was erroneously informed that the guidelines applicable to him — with the career offender enhancement — would be "17 to 20 [years]. N.T., 12/13/2017, p. 61, line 17. He testified that the reason he proceed to trial was because he understood that he would "get 20 years if I fight and 17 if I plead guilty. I had no choice but to fight this case". N.T., 12/13/2017, p. 59, lines 8-13.

He further clarified his reasons for pleading guilty: "I'm not laying down for 17 to 20 years. That's the only reason why I fought this case." N.T., 12/13/2017, p. 61, line 19 — p. 62., line 3.

Mr. Canalichio's testimony is corroborated by his email communications to Trial Counsel. Mr. Canalichio emailed that "Can you find out what they are offering for a plea bargain? How much time I am looking at with and without the plea? Looking forward to hearing from you. If they are talking career roll your sleeves up and get ready for a fight." Govt. Ex. 7, p. 2 (9/12/2011 email). The clear implication in this email (and in other emails referenced herein) is that if the career offender enhancement did *not* apply, Mr. Canalichio *would* be interested in tendering a guilty plea.

Mr. Canalichio's testimony is also corroborated by his testimony — confirmed by the PSR — that despite facing charges previously in his life he had never proceeded to a jury trial before. N.T., 12/13/2017, p. 63, lines 10-13.

Mr Canalichio testified that he discussed the guidelines with Trial Counsel but "Just them guidelines, just the 17 to 20. That's all we — that's the only number we ever — we ever went over…. It was never — it was always 17 to 20, nothing else." N.T., 12/13/2017, p. 59, lines 20-25. When asked if Trial Counsel ever reviewed guidelines that may apply without the career offender enhancement, Mr. Canalichio testified "[t]here was nothing under 10 years ever. It was always 17 to 20 and, you know, hope we'll to see you the low end. And that's where we left it". N.T., 12/13/2017, p. 61., lines 10-18.

The record is clear that if the career offender guidelines had applied in this case, the guideline range would have been 210 to 240 months. The guideline range as determined by the Court (without the three-level reduction for acceptance of responsibility) was 110-137 months. With the three-level reduction, the guideline range would have been 84-105 months.

The Court ultimately denied the Government's motion for an upward variance and sentenced Mr. Canalichio to 137 months of incarceration — that is, the high end of the guideline range. It is respectfully contended here that it is reasonable to infer that given the Court's analysis in imposing judgment of sentence, Mr. Canalichio would likely have received the high end of whatever guideline range applied. That is, if Mr. Canalichio had entered a guilty plea and received a three-level reduction, he would have received a sentence of 105 months of incarceration.

It is contended here that Mr. Canalichio demonstrated a reasonable probability that he would have chosen to plead guilty if he had been properly advised concerning the applicability of the career offender enhancement. Mr. Canalichio has also demonstrated a

reasonable probability that he would have received a lesser sentence had he entered a guilty plea based on the significantly lower guideline range that would have applied.

Accordingly, the prejudice prong of *Strickland,* as refined by *Lafler* in the context of a guilty plea, has been satisfied. That is, Mr. Canalichio was denied the opportunity to enter a guilty plea with a guideline range of 84-105 months. Because of this, it appears likely he was sentenced to an additional 32 months of incarceration (the difference between the actual sentence of 137 months less the projected "guilty plea" sentence of 105 months). It is contended here that this constitutes prejudice as contemplated by *Strickland,* and *Lafler, supra.*

## C.  <u>SUGGESTED REMEDY</u>

The record is clear that if the career offender guidelines had applied in this case, the guideline range would have been 210 to 240 months. The guidelines as determined by the Court (without the three-level reduction for acceptance of responsibility) were 110-137 months. With the three-point reduction, the guidelines would have been 84-105.

If Trial Counsel is found to have rendered deficient performance as contemplated by *Strickland,* it is respectfully urged that the appropriate remedy is to schedule a re-sentencing hearing so that Mr. Canalichio may gain the benefit of the guideline range that would have applied had he acted on appropriate advice concerning the applicability of the career offender enhancement and entered an open guilty plea (i.e., with a guideline range of 84 to 105 months).

D.      <u>**CONCLUSION**</u>

Mr. Canalichio respectfully asserts that at the Section 2255 Hearing, he successfully proved, by a preponderance of the evidence, that Trial Counsel rendered deficient performance by failing to fully and properly advise him with respect to the relevant sentencing guidelines. Trial Counsel's advice to Mr. Canalichio, in connection with the career offender enhancement, was constitutionally deficient and "was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer." *Day,* 969 F.2d at 43. Instead, Mr. Canalichio was provided with a false scenario that essentially mandated that he take the matter to trial.

Additionally, Mr. Canalichio was prejudiced by this ineffectiveness because he was denied the opportunity to enter a plea subject to the appropriate (lower) guideline range.

WHEREFORE, Counsel respectfully requests that the Honorable Court schedule a new sentencing hearing so that Mr. Canalichio may be sentenced in connection with the appropriate guideline range that would have applied had he entered a guilty plea prior to trial.

Respectfully submitted,

_____
Henry S. Hilles, III, Esquire
Attorney for Defendant Damion Canalichio
Attorney I.D. No. 73968
509 Swede Street
Norristown, PA 19401

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| **v.** | : | **NO.  09 - 496 - 08** |
| | : | |
| **DAMION  CANALICHIO** | : | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within motion was served by

ECF notification to the following on the below-referenced date:

The Honorable Eduardo C. Robreno

United States Courthouse
601 Market Street
Philadelphia, PA  19106


John S. Han, Esquire
Assistant U.S. Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA  19106
*Counsel for the Government*


/s/ Henry S. Hilles, III
HENRY S. HILLES, III
Attorney for Defendant Damion Canalichio


Date:  May 6, 2018