IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| | : | NO. 09-00496-08 |
| | : | |
| v. | : | |
| | : | |
| DAMION CANALICHIO | : | |


**M E M O R A N D U M**

EDUARDO C. ROBRENO, J.                    March 28, 2019


Damion Canalichio is a federal prisoner incarcerated at Federal Correctional Institution Danbury, Connecticut.  In 2013, Canalichio was convicted of RICO conspiracy and sentenced to incarceration for 137 months.

Canalichio filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, claiming that he received ineffective assistance of counsel in three ways: failure to object and preserve objections over evidentiary issues; conflict of interest; and failure to advise of the benefits of entering an open plea.

The Court finds that Canalichio has not shown that his trial counsel was ineffective.  First, Canalichio is incorrect that certain objections should have been made at trial, and he is incorrect that other objections were not made.  Second,

because his counsel properly made the foregoing objections and
had no grounds to make others, there is no conflict of interest.
Third, Canalichio was advised of the risks and benefits of an
open plea, and his counsel could not be expected to be
clairvoyant about the Court's discretionary rulings.  For the
reasons set forth below, the § 2255 Motion will be denied, and a
certificate of appealability will not be issued.

## Table of Contents

I.    BACKGROUND ............................................. 3
  A.  Indictment, Trial, Conviction, and Appeal .............. 3
  B.  Canalichio's § 2255 Motion ............................ 6
II.  HABEAS RELIEF FOR INEFFECTIVE ASSISTANCE OF COUNSEL ....... 7
  A.  Strickland test ....................................... 8
  B.  Assistance of counsel during plea bargaining ........... 9
III.  GROUND ONE – FAILURE TO OBJECT TO EVIDENTIARY ERRORS AND
PRESERVE OBJECTIONS......................................... 10
  A.  Overview testimony ................................... 11
  B.  Confrontation Clause ................................. 16
  C.  Hearsay .............................................. 19
  D.  Mixed fact/expert testimony .......................... 20
  E.  Conclusion ........................................... 25
IV.  GROUND TWO - CONFLICT OF INTEREST ....................... 25
V.   GROUND THREE - FAILURE TO PROPERLY ADVISE BENEFITS OF OPEN
PLEA ...................................................... 26
  A.  Introduction ......................................... 26
  B.  Discussion ........................................... 27
  C.  Conclusion ........................................... 33
VI.  CERTIFICATE OF APPEALABILITY ............................ 33
VII.  CONCLUSION ............................................. 33

I.     **BACKGROUND**

   A.    **Indictment, Trial, Conviction, and Appeal**

   Defendant Damion Canalichio was indicted on January 5, 2011, of one count of RICO conspiracy in violation of 18 U.S.C. § 1962(d) and two counts of conducting an illegal gambling business in violation of 18 U.S.C. § 1955.  ECF No. 3.  The charges arose from Canalichio's involvement with a criminal enterprise known as the Philadelphia La Cosa Nostra Family ("the LCN Family") from 1999 through January 2011.  The indictment charged fourteen members and associates of the LCN Family, including Canalichio.  Id.  Canalichio and six other defendants proceeded to trial in October 2012.

   On February 5, 2013, following a four-month trial, a jury convicted Canalichio of RICO conspiracy, acquitting him of the illegal gambling charges.  The Government produced evidence at trial demonstrating that Canalichio was a "made" member of the LCN Family and was involved in a pattern of racketeering activity that included extortion and illegal gambling.

   On May 3, 2013, Canalichio filed a sealed post-trial motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the evidence was insufficient to convict him.  ECF No. 1349.  Canalichio argued in the alternative for a new trial pursuant to Rule 33, on the basis that the Court had not excluded two jurors who had been

exposed to extraneous information.  See id.  The Court denied the motions on July 8, 2013.  See ECF Nos. 1387, 1388.

On July 18, 2013, Defendant was sentenced to 137 months of imprisonment, followed by three years of supervised release, with a fine of $1,000 and a special assessment of $100. ECF No. 1414.  At sentencing, the Court calculated a base offense level of 20 and reached a final level of 26 after applying two enhancements:  1) a two-level enhancement after finding that Canalichio was a manager or supervisor of racketeering activity under U.S.S.G. § 3B1.1(c); and 2) a four-level enhancement based on grouping under § 3D1.4.  See ECF No. 1427 at 48-55.

The Court did not apply a career offender enhancement. See id. at 53.  Although the Court concluded that Canalichio's underlying conspiracy crimes were crimes of violence (extortion), id. at 54-55, which would have qualified him as a career offender under U.S.S.G. § 4B1.1,[1] the Court opted not to sentence Canalichio as a career offender.  Id. at 53.  The Court noted that there was an absence of Supreme Court and Third Circuit precedent on whether RICO conspiracy constituted a crime

---

[1]      As career offender, Canalichio's mandatory total offense level would be 32 with a criminal history category of VI, resulting in an advisory guidelines range of 210 to 240 months.

of violence under the career offender guidelines, and invoked
the rule of lenity to decline to apply the enhancement.  Id.

The Court explained that a guideline sentence based on
an offense level of 26 combined with a criminal history category
of V ranged from 110 to 137 months.  Id. at 55.  The Court
imposed a guideline sentence at the top of the range based on
the nature of the criminal activity and Canalichio's involvement
in it.  Id. at 89-92.

Canalichio appealed his conviction and sentence,
arguing six grounds:  1) the evidence at trial was insufficient
to convict him; 2) the Court abused its discretion by failing to
excuse two jurors who had been exposed to extraneous
information; 3) the Court wrongly admitted certain expert
testimony of retired FBI Special Agent Joaquin Garcia; 4) the
Court improperly precluded cross-examination of three FBI agents
regarding disciplinary infractions in their personnel files
related to cheating on an internal examination; 5) the Court
abused its discretion in denying defense requests for the
medical records of Michael Orlando, a Government witness whose
trial testimony was interrupted by a hospital stay; and 6) the
Court's offense-level calculations and application of a two-
level managerial enhancement at sentencing were unsupported by
the record.  See ECF No. 1806, Motion ¶ 9.  The Third Circuit

denied Canalichio's appeal on January 15, 2016.  <u>United States</u>
<u>v. Massimino</u>, 641 F. App'x 153, 169-71 (3d Cir. 2016).

   **B.   Canalichio's § 2255 Motion**

       Canalichio filed the § 2255 Motion pro se on April 6,
2017.  ECF No. 1806.  Canalichio raised three grounds, all of
which relate to the alleged ineffectiveness of his trial
counsel, Margaret Grasso, Esq.:

   1)   Grasso failed to properly object to numerous
        evidentiary errors at trial, failed to preserve those
        issues for appeal, and failed to raise a claim on
        direct appeal that the cumulative effect of the
        evidentiary errors denied him a fair trial;

   2)   Grasso suffered from a conflict of interest based on
        her failure to properly object to the evidentiary
        errors identified in Ground One; and

   3)   Grasso failed to properly inform him of the option and
        benefits of entering an open guilty plea, and grossly
        miscalculated his sentencing exposure.  Canalichio
        claims that Grasso incorrectly advised him that he
        would face nearly 20 years in prison if he pleaded
        guilty without agreeing to cooperate, as opposed to
        his actual sentence exposure of 84 to 105 months.

<u>Id.</u>, Motion ¶ 12; <u>see also</u> <u>id.</u>, Rider to Motion, ¶¶ 9, 91, 95.

       The Court appointed counsel, Henry Hilles, III, Esq.,
to represent Canalichio, and then held an evidentiary hearing on
the third ground that Ms. Grasso had failed to properly advise
Canalichio of the benefits of the open plea and had

miscalculated the applicable sentences.[2]  See ECF 1873.  After the hearing, Canalichio filed two counseled supplemental briefs on Ground Three, and the Government responded to both.  ECF Nos. 1891, 1896, 1909, 1936.  The § 2255 Motion is now ripe for disposition.

## II.   HABEAS RELIEF FOR INEFFECTIVE ASSISTANCE OF COUNSEL

A federal prisoner may bring a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the basis that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose the sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).

In general, claims not raised on direct appeal may not be raised on collateral review unless the prisoner demonstrates cause and prejudice.  See Massaro v. United States, 538 U.S. 500, 504 (2003).  However, an ineffective assistance of counsel claim, in particular, may be raised in a motion under § 2255 regardless of whether the prisoner first raised the claim on direct appeal.  See id.

---

[2]         Grounds One and Two were submitted on the papers.

## A.   **Strickland** **test**

To obtain reversal of a conviction on the basis of ineffective assistance of counsel in violation of the Sixth Amendment, a prisoner must establish:  1) his "counsel's representation fell below an objective standard of reasonableness," and 2) the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008).  If a prisoner fails to satisfy either prong of the Strickland standard, his claim will fail.  Strickland, 466 U.S. at 697.

Counsel's strategic choices have a strong presumption of correctness.  Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996).  Counsel cannot be ineffective for failing to raise meritless claims.  Lafler v. Cooper, 566 U.S. 156, 167 (2012) ("Because the objection upon which [the petitioner's] ineffective-assistance-of-counsel claim was premised was meritless, [the petitioner] could not demonstrate an error entitling him to relief.").

### 1.   **Objectively reasonable representation**

A court will consider the reasonableness of counsel's performance under all of the circumstances, and the court's "scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.  The court must "indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance." <u>Id.</u>  "A fair assessment
of attorney performance requires that every effort be made to
eliminate the distorting effects of hindsight, to reconstruct
the circumstances of counsel's challenged conduct, and to
evaluate the conduct from counsel's perspective at the time."
<u>Id.</u>

To satisfy the first prong of <u>Strickland</u>, the prisoner
must:  1) identify acts or omissions that do not result from
"reasonable professional judgment," and 2) establish that the
identified acts and omissions fall outside of the "wide range of
professionally competent assistance."  <u>Id.</u> at 690.

## 2.   Prejudice to defense

To prove prejudice, a prisoner must affirmatively show
that "there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different."  <u>Id.</u> at 694.  "A reasonable probability is
probability sufficient to undermine confidence in the outcome."
<u>Id.</u>

## B.   Assistance of counsel during plea bargaining

The Sixth Amendment right to counsel includes the
right to effective assistance of competent counsel during the
plea-bargaining process and when deciding whether to plead
guilty.  <u>Lafler</u>, 566 U.S. at 162-63.  Where a defendant brings
an ineffective assistance of counsel claim based on advice

9

received during the plea process, "a defendant must show the outcome of the plea process would have been different with competent advice." Id. at 163.  If a defendant claims that his counsel's ineffective assistance led him to plead not guilty and proceed to trial, in order to show prejudice, the defendant must "demonstrate a reasonable probability" that he would have pleaded guilty if he had been afforded effective assistance of counsel.  Missouri v. Frye, 566 U.S. 134, 147 (2012).

**III. GROUND ONE – FAILURE TO OBJECT TO EVIDENTIARY ERRORS AND PRESERVE OBJECTIONS**

Canalichio argues that his trial counsel, Margaret Grasso, Esq., failed to object to the testimony of several witnesses, and that the testimony was either:  1) improper "overview testimony," ECF No. 1806, Rider to Motion ¶¶ 21-30; 2) violative of his rights under the Confrontation Clause of the Sixth Amendment, id. ¶¶ 31-51; 3) hearsay, id. ¶¶ 52-60; or 4) improper mixed fact/expert testimony, id. ¶¶ 61-72.  Canalichio takes issue principally with the testimony provided by FBI Special Agents Martinelli and Augustine.

Canalichio's arguments sometimes stray from the appropriate type of collateral attack that he has raised -- ineffective assistance of counsel for failure to object -- to what are inappropriate direct attacks -- the evidence was inadmissible for one reason or another.  To be sure, Canalichio

must establish that there was some underlying error that should have been addressed by his trial counsel, but Canalichio appears to overlook that his trial counsel did object to many of the alleged errors he complains about.  Moreover, for those alleged errors to which Ms. Grasso did not object, she would have had no basis to make an objection.

### A.   Overview testimony

#### 1.   Law

Overview testimony has been characterized by the First Circuit as testimony from a witness who "is typically a government agent who testifies as one of the prosecution's first witnesses and, as the term implies, provides an overview or roadmap of the prosecution's case to come."  United States v. Rose, 802 F.3d 114, 120 (1st Cir. 2015) (quotation marks omitted) (quoting United States v. Etienne, 772 F.3d 907, 913 (1st Cir. 2014)) (citing United States v. Meises, 645 F.3d 5, 13–18 (1st Cir. 2011); United States v. Flores–De–Jesús, 569 F.3d 8, 20–26 (1st Cir. 2009); United States v. Casas, 356 F.3d 104, 117–21 (1st Cir. 2004)).  As the First Circuit has explained, a witness providing overview testimony "is generally problematic as he or she may influence the jury's determination of facts or credibility assessments not yet in evidence; he or she may also provide testimony differing from what is to come; and the jury may place greater weight on the witness's testimony

since it has the imprimatur of the government." Id. at 120-121 (quotation marks omitted) (quoting Etienne, 772 F.3d at 913).

A government witness does not provide improper overview testimony when he testifies about his role in the investigation, no matter how extensive that role may have been. See United States v. Figaro, 126 F. App'x 75, 78 (3d Cir. 2005) (distinguishing the testimony of a law enforcement officer who described his involvement in the case from conclusory, non-personal, overview testimony that was ruled impermissible in United States v. Casas, 356 F.3d 104, 117-24 (1st Cir. 2004) and United States v. Griffin, 324 F.3d 330 (5th Cir. 2003)).

**2.   Discussion**

Canalichio argues that Martinelli gave impermissible overview testimony which "tainted the trial." ECF No. 1806, Rider to Motion ¶ 28. But Canalichio's arguments lack merit because Martinelli's testimony was not overview testimony -- Martinelli was involved early on in the investigation and had a key role in it.

Martinelli did not provide an overview or roadmap to the case; rather, he testified about his role in the investigation and what he learned in that role. He was a case agent and also a handling agent for three people involved in the investigation:  Henry Scipione, a cooperating witness in the case, and Special Agents Stone and Sebastiani who were two

12

undercover FBI agents.  Martinelli had a great deal of personal

knowledge about all aspects of the case, and he properly

testified about those aspects.

Canalichio also argues that Martinelli gave

impermissible overview testimony by testifying as follows:

> AUSA Han:  Now, we've heard from Mr.
> Scipione that he made recorded payments
> to Anthony Staino.  Where did that
> money come from?
>
> Martinelli:  The money for all his
> payments was paid by us.  At the point
> where he decides to cooperate with us,
> it's now turned into evidence purchased
> is the words we use.  Obviously there
> are no drugs or narcotics in this case,
> but it's akin to that.  If you're
> purchasing drugs or narcotics as a
> cooperator, the FBI is paying for those
> drugs or narcotics and that's going to
> be evidence.  So for us making a
> loanshark payment was evidence.  As we
> paid the money, that was evidence of
> the crime that was being committed at
> that time, so it was all FBI money.
>
> AUSA Han:  Is there a particular
> process that you must pursue before
> getting approval for money to be used
> in this manner?
>
> Martinelli:  There is.  To get money, I
> have to put in a paper request which
> goes to my supervisor and then goes to
> his supervisor above him.  So, we have
> two layers that can either approve,
> deny or change the amount you request.
> So, I have to write up what the
> situation is, I have to write up what
> the case is, I have to write up what my
> plan is for the particular day and a
> particular event that we're doing, and

> why I need the money I need and what
> the amount is.  So basically your two
> layers of supervision have to say yep,
> you got a good case, we think this will
> work, let's move forward and you can
> have the money for today to make the
> payment.
>
> AUSA Han:  Do you have to undergo that
> process every time you make a payment?
>
> Martinelli:  Yes, every single time.

ECF No. 1307 at 14:8-15:16.

This testimony is not overview testimony, or otherwise improper for the reasons that overview testimony is regarded as suspect.  Martinelli's testimony was based on personal knowledge.  He provided background and context for how the FBI deals with handling money as part of a criminal investigation, be it payments for narcotics transactions or payments to pay off debts, as was the case in this investigation.

Martinelli's explanation of the process does not suggest government imprimatur on his or a subsequent witness's testimony.  At most, the testimony shows that the government requires approval at two levels before a case agent may proceed with a particular course of action involving the transfer of money.  The testimony explains that the approval is conferred when, in the judgment of two levels of suprevisors, the plan of action is sound and worthy of spending taxpayer dollars.  This is not a situation where Martinelli testified that, in his

opinion, Canalichio was guilty of the crimes charged, which is a typical imprimatur situation. See, e.g., United States v. Meises, 645 F.3d 5, 15 (1st Cir. 2011) ("When a law enforcement witness expresses opinions as to defendants' culpability based on the totality of information gathered in the course of their investigation, these conclusory statements often involve impermissible lay opinion testimony, without any basis in personal knowledge, about the role of the defendant in the conspiracy." (alterations and quotation marks omitted) (quoting Flores-De-Jesús, 569 F.3d at 19)).

Similarly, Canalichio's challenges must also fail regarding Martinelli's testimony about the "FBI's game plan" for the undercover agents, and about whether Scipione has entered the witness protection program. ECF No. 1806, Rider to Motion ¶¶ 26-27. Martinelli testified as to his personal knowledge. This is not overview testimony or otherwise impermissible.

Ms. Grasso had no basis to raise objections to Martinelli's testimony because any argument would have lacked merit. As such, Ms. Grasso cannot be found to have been ineffective for failing to object where she had no legitimate basis to do so. See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.").

**B.    Confrontation Clause**

**1.    Law**

The Confrontation Clause of the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004).

The "admissibility of nontestimonial hearsay is governed solely by the rules of evidence."  United States v. Berrios, 676 F.3d 118, 126 (3d Cir. 2012) (citing Davis v. Washington, 547 U.S. 813, 823–24 (2006)).

"The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  Crawford, 541 U.S. at 59 n.9 (citing Tennessee v. Street, 471 U.S. 409, 414 (1985)).

In the Third Circuit, the trial court must conduct a twofold inquiry into an alleged Confrontation Clause violation:

> First, a court should determine whether the contested statement by an out-of-court declarant qualifies as testimonial under Davis and its progeny.  Second, the court should apply the appropriate safeguard.  If the absent witness's statement is testimonial, then the Confrontation Clause requires "unavailability and a prior opportunity for cross-examination."  Crawford, 541 U.S. at 68.  If the statement is nontestimonial, then admissibility is

> governed solely by the rules of
> evidence.  <u>Davis</u>, 547 U.S. at 823.

<u>Berrios</u>, 676 F.3d at 127.

### 2.  Discussion

Canalichio argues that Martinelli provided testimony that violated the edicts of <u>Crawford</u>.  ECF No. 1806, Rider to Motion ¶ 25.  Specifically, Canalichio challenges the following testimony:

> AUSA Han:  Now, you mentioned that Supervisor Special Agent Stone posing as a character named Vinny, had been introduced earlier on in your investigation.  Can you briefly explain how that came about?
>
> Martinelli:  Right. There was a cooperating witness who you will hear from, Mr. Albo.  Mr. Albo owed money to Mr. Battaglini, Defendant Battaglini and Defendant Canalichio and Defendant Barretta who is no longer a defendant, he could not pay the money. He talked with the FBI.  He already created a story where there was somebody else that really owed the money, it wasn't me, it was somebody else.  We took that opportunity to enter an undercover agent as the somebody else, and Special Agent Stone was Vinny.  His character became that other person that owed the money.
>
> AUSA Han:  And did Vinny make recordings with respect to that aspect of the investigation?
>
> Martinelli:  He did. He made recordings with respect to the gambling debt, bookmaking.

17

ECF No. 1307 at 31:3-22.

Martinelli's testimony merely provided context for how the character "Vinny," Stone's undercover persona, came to play a role in the investigation and what that role was.  The testimony was not offered for the truth of the matter asserted. Because there was no violation of the Confrontation Clause by providing this testimony, Ms. Grasso cannot be found wanting for failing to have objected to this testimony.

Canalichio complains that no "expert notice" was provided for Augustine, argues Augustine was improperly qualified as an expert, and Augustine's testimony "blatantly violated" Crawford.  ECF No. 1806, Rider to Motion ¶¶ 32-46.

Canalichio's attacks are meritless in regard to Ms. Grasso's performance with this witness.  As a threshold issue, and contrary to Canalichio's assertions, Augustine's expert notice was provided.  See ECF No. 1817-1 at 14-18.  But fatal to Canalichio's argument of ineffective assistance of counsel here are the facts of Ms. Grasso's performance as shown by the trial record.  Ms. Grasso, and the defense counsel for the other defendants, did object to Augustine's testimony.  See ECF No. 1325 at 14:10-18:8, 185:25-195:25.  Ms. Grasso specifically raised objections based on Crawford and hearsay (id. at 15:10-17:7); sought limiting instructions in light of the Court's admission of testimony (id. at 196:3-199:6); and challenged

Augustine's qualifications as an expert (ECF No. 1326 4:9-8:7, 18:5-19:3).  To the extent that Canalichio argues that there are other <u>Crawford</u> or hearsay violations that should have been objected to, Canalichio is incorrect because the witness either spoke from personal knowledge or there are no out of court statement being offered for the truth of the matter asserted.

Canalichio also argues that FBI Special Agents Bernstein and Bara made Crawford violations concerning tape recordings of Nicholas Stefanelli.  ECF No. 1806, Rider to Motion ¶¶ 47-51.  However, the Court ruled pretrial the tapes were admissible, and so Ms. Grasso had no basis to make an objection.  <u>See</u> ECF No. 883.

### C.   **Hearsay**

Under the heading "Examples of Hearsay Violations," Canalichio cites several pages of the trial transcript which he argues demonstrate the admission of hearsay testimony.  ECF No. 1806, Rider to Motion ¶¶ 52-59.  Canalichio argues that several FBI agents testified as to the identity of various individuals on surveillance recordings, how the government ran the investigation, and that a searches were conducted.  <u>Id.</u>

Canalichio does not explain how these statements are hearsay, and the Court has reviewed each challenged statement and concludes that, in fact, none is hearsay.  Ms. Grasso had no basis to raise objections to the testimony that Canalichio now

19

challenges.  As such, Ms. Grasso cannot be found to have been ineffective for failing to object.

**D.   Mixed fact/expert testimony**

　　　　**1.   Law**

　　　　A number of Circuit Courts have held that a case agent may testify as both a fact witness and an expert.  See, e.g., United States v. Cheek, 740 F.3d 440, 452 (7th Cir. 2014) (finding no error or only harmless error for mixed testimony); United States v. York, 572 F.3d 415, 426 (7th Cir. 2009) (no prejudice necessarily flows unless it was unclear whether the witness was testifying as to expert opinions or facts); United States v. Freeman, 498 F.3d 893, 904 (9th Cir. 2007) ("[T]he use of case agents as both expert and lay witnesses is not so inherently suspect that it should be categorically prohibited."); United States v. Dukagjini, 326 F.3d 45, 56 (2d Cir. 2003) (declining to prohibit categorically the use of case agents as experts, and noting district court has the responsibility "to avoid falling into error by being vigilant gatekeepers of such expert testimony to ensure that it is reliable").

　　　　As with any other expert, subject to being qualified, a case agent may testify by way of opinion as to the meaning of code words used by the defendant or third parties during the investigation.  See, e.g., United States v. Berry, 132 F. App'x

957, 962 (3d Cir. 2005) ("As an expert, [Detective] Chaves was
qualified to explain coded terms to the jury and give his
opinion regarding the meaning of these [code-word] phrases.");
see also United States v. Gibbs, 190 F.3d 188, 211-12 (3d Cir.
1999) (expert testimony that aids the jury's understanding of
code words in recorded conversations is admissible).
Furthermore, a case agent may testify from personal knowledge
about code words, for example where a nickname is used.  Berry,
132 F. App'x at 963; Fed. R. Evid. 701.

        The Third Circuit does not appear to have "squarely
addressed" in a precedential opinion the issue of whether an
agent can testify as both a fact witness and an expert witness,
but one district court within the Circuit has synthesized the
reasoning from other Circuits.  United States v. Napoli, No.
CIV.A. 11-6353, 2012 WL 4459584, at *6 (E.D. Pa. Sept. 26, 2012)
(proceeding to analyze the case-at-hand using Dukagjini as a
guide); see also United States v. Moten, 617 F. App'x 186, 191
(3d Cir. 2015) (finding that a case agent has testified solely
as a fact witness); United States v. Cobb, 483 F. App'x 719, 725
(3d Cir. 2012) (no error in allowing a police officer to serve
as both an expert witness and a fact witness).  In Napoli, the
district court identified three types of problem that can arise
when a witness testifies to facts and expert opinions: 1) the
witness's expertise may confer upon him an "aura of special

[reliability] and trustworthiness;" 2) cross-examination may be inhibited; and 3) the testimony may stray from that which is based on reliable methodology to sweeping conclusions.  Napoli, 2012 WL 4459584, at *6-7 (quoting Dukagjini, 326 F.3d at 53) (finding no prejudice).

Given the risks of jury confusion and prejudice, the Circuit Courts have exhorted district courts to employ proper safeguards, such as "requiring the witness to testify at different times, in each capacity; giving a cautionary instruction to the jury regarding the basis of the testimony; allowing for cross-examination by defense counsel; establishing a proper foundation for the expertise; or having counsel ground the question in either fact or expertise while asking the question."  United States v. Garcia, 752 F.3d 382, 392 (4th Cir. 2014); see also York, 572 F.3d at 425 (recognizing precautions akin to those in Garcia).

### 2.  Discussion

Canalichio argues that Augustine, Martinelli, and Stone "improperly took a role . . . and provided 'interpretation' of recordings to 'provide an alternative, purportedly better informed, gloss on the fact of the case.'" ECF No. 1806, Rider to Motion ¶ 62.  Canalichio cites various non-Third Circuit cases where a court had opined on the problems where a witness's fact and expert testimony had become

22

conflated, and in some cases ruled a prejudicial error was made during trial.  Id. ¶¶ 61-71 (citing Garcia, 752 F.3d at 392 ("[T]he instruction given here was insufficient to mitigate the potential for prejudice" from the mixed testimony.); Dukagjini, 326 F.3d at 53; United States v. Mejia, 545 F.3d 179, 196 (2d Cir. 2008) ("[T]he district court erred in allowing [the case agent] to testify beyond the bounds for which expert testimony would have assisted the jury in understanding the evidence."); York, 572 F.3d at 426 (finding that some, but not all, of a case agent's testimony was impermissible because it was unclear whether it was offered as fact or expert testimony); Cheek, 740 F.3d at 447; Freeman, 498 F.3d at 904).

Canalichio appears to argue generally that Agents Augustine, Martinelli, and Stone gave some improper fact/expert testimony, but he does not pinpoint in the transcript any prejudicial error.  Given that there is no presumed prejudice that flows from a case agent's testimony as a fact witness and also as an expert witness, Canalichio's argument lacks merit.

In any event, Augustine and Martinelli provided appropriate testimony regarding the meaning of code words and cryptic conversations contained on various intercepted recordings.  See, e.g., ECF No. 1326, Trial Tr. at 4-16 (Nov. 27, 2012); ECF No. 1338, Trial Tr. at 123-33 (Dec. 4, 2012); ECF No. 1340, Trial Tr. at 223-35 (Dec. 6, 2012); ECF No. 1341,

Trial Tr. at 5-16 (Dec. 7, 2012).  Contrary to Canalichio's contention that his trial counsel failed to object, Ms. Grasso did object to both Augustine and Martinelli's testimony about the interpretation of the code words.  ECF No. 1326, Trial Tr. at 6-7 (Nov. 27, 2012); ECF No. 1340, Trial Tr. at 228-30 (Dec. 6, 2012).  However, the Court overruled the objections and allowed Augustine's and Martinelli's expert testimony regarding the code words.  ECF No. 1326, Trial Tr. at 7 (Nov. 27, 2012); ECF No. 1340, Trial Tr. at 231 (Dec. 6, 2012).

To the extent Canalichio appears to want to challenge Stone's testimony, Canalichio fails to indicate where Stone's testimony was provided as an expert, let alone was prejudicial for mixing up fact and expert testimony.  Canalichio cites several pages of the trial transcripts from November 19 and 20, 2012.  See ECF No. 1806, Rider to Motion ¶ 34 (citing ECF No. 1323, Trial Tr. at 29-39 (Nov. 19, 2012); ECF No. 1325, Trial Tr. at 24-26, 28-30, 37-39, 57, 87 (Nov. 20, 2012)).  Stone was an undercover agent playing the role of "Vinny," and his testimony was as a fact witness.  In one instance identified by Canalichio, the defense did object to Stone's testimony as being premised on being an "expert at gambling," and the Court sustained the objection.  ECF No. 1325 at 57-58.

Canalichio is incorrect that there were any problems with the testimony of Augustine, Martinelli, and Stone due to

24

improper mixing of fact and expert testimony.  Ms. Grasso had no basis to raise objections to this testimony for the reasons Canalichio argues.

### E.  Conclusion

Canalichio's trial counsel was not ineffective for failing to object.  She either objected or had no basis to object, and therefore her performance at trial was not ineffective.  Ground One is therefore without merit, and the § 2255 Motion is denied as to this ground.

## IV.  GROUND TWO - CONFLICT OF INTEREST

Canalichio argues that Ms. Grasso "had an actual conflict of interest based on her failure to properly object to the numerous evidentiary issues identified above at trial [to] preserve those issues for appeal."  ECF No. 1806, Rider to Motion ¶ 91.  According to Canalichio, Ms. Grasso:

> could have told [him] that she had
> rendered ineffective assistance by
> failing to properly object to the
> evidentiary issues identified above,
> and had a candid and informed
> discussion with [him]as to how her
> failure to object would impact upon the
> issues he could raise on appeal, and
> about his legal options and strategies,
> including the possibility of raising
> her own ineffectiveness in a post-
> conviction Rule 33 motion so the record
> could be developed and the issues
> properly preserved for appeal.

Id., Rider to Motion ¶ 92.

Canalichio's argument continues:  Ms. Grasso "knew she had performed deficiently, yet she continued to represent [him], and did not inform [him] about the impact of her deficient representation on his continued representation at the Rule 33 and appellate stages of his case."  Id., Rider to Motion ¶ 93.

The Court finds Canalichio's assertions are baseless. Canalichio has failed to show that as trial counsel, Ms. Grasso was ineffective for failing to object, therefore she cannot have had a conflict of interest for failing to inform him of any deficiency or to raise on appeal any issue concerning trial counsel's (i.e., her own) failure to object.  Ground Two is therefore without merit, and the § 2255 Motion is denied as to this ground.

## V.   GROUND THREE - FAILURE TO PROPERLY ADVISE BENEFITS OF OPEN PLEA

### A.   Introduction

Canalichio argues that Ms. Grasso was ineffective by "failing to properly inform him of the option and benefits of entering an open plea," and misinforming him he would be sentenced as a career offender.  ECF NO. 1806, Rider to Motion ¶ 95.  According to Canalichio, Ms. Grasso's failure resulted in him believing he faced a substantially higher sentence exposure, and "prejudicially impacted the decisions he made about whether to plead guilty or proceed to trial."  Id.  Canalichio states

26

that Ms. Grasso advised him of his exposure as a career offender only, and that if pleaded open, "he would likely receive a sentence of about 18 years, versus the about 20 year sentence he was facing if convicted at trial." Id. ¶ 99.

Canalichio avers that if "trial counsel properly advised him about his plea options, [he] would have pled guilty through an 'open' plea, the Court would have accepted his plea, and he would have received a sentence of less prison time." Id. ¶ 95. Canalichio argues that he was prejudiced by receiving a higher sentence following trial (137 months) instead of a lower sentence following an open plea (105 months). Id. ¶ 106; ECF No. 1891 at 17.

There is no merit to Canalichio's arguments. He was advised of the benefits of an open plea. He was told that he might be found to be a non-career offender. He was also told that the Court, and the Court alone, would make that decision. Finally, the difference in sentencing arises from his informed decision not to make an open plea.

B.   Discussion

1.   Canalichio was informed about the option of an open plea and the lower sentence for non-career offender status

Canalichio argues that Ms. Grasso failed to advise him of the potential benefits of an open plea. ECF No. 1806, Rider to Motion at 25 ("Ground 3:   Petitioner's counsel was

ineffective by failing to properly inform him of the option and benefits of entering an open plea, and by grossly miscalculating his sentencing exposure").

The record shows, and Canalichio's own briefing admits, that he was advised of the possibility of making an open plea and that he was advised that an open plea may reduce his sentencing exposure from that which he faced at trial.  See ECF No. 1873 at 31-34; Gov't Ex. 7 (email communications between Canalichio and Ms. Grasso); ECF No. 1891 at 8.

Canalichio also argues that he was never advised about the possibility of being sentenced as a non-career offender in the event the Court construed the RICO statute as not necessarily being a crime of violence.

The record shows that he was advised of the possibility of being sentenced as a non-career offender, and that such a sentence would be lower than a career offender sentence.  ECF No. 1873 at 24-25, 40-41, 50, 69.  Indeed, after discussing strategy with her client, Ms. Grasso filed a motion seeking to reopen the hearing on Canalichio's bail status, in which she argued that if Canalichio were to be convicted of the crimes charged, he would not be a career offender and would have a concomitantly much shorter sentence.  ECF No. 338 ¶ 13; see also ECF No. 1873 at 23, Gov't Ex. 2.  Whether or not Ms. Grasso discussed the categorical approach in those words, she did

28

discuss with Canalichio the reason why the career offender
guidelines would not apply.  ECF No. 1873 at 50.

### 2.   The Court could have sentenced Canalichio as a career offender

Canalichio's argument is premised on the idea that he
was always going to be sentenced as a non-career offender.
Canalichio is wrong.  He did qualify as a career offender.
However, sentencing as a career offender is discretionary, and
Ms. Grasso could not be expected to predict with certainty that
the Court would invoke the rule of lenity.  Such a prediction,
if it was made, would have amounted to no more than guesswork
and speculation.  Canalichio's use of 20-20 hindsight is
inappropriate, and his ineffective assistance argument requires
prescience that no lawyer can be expected to command.

Several Circuit Courts have used the "modified
categorical approach" to determine whether a defendant's instant
conviction was a crime of violence.  See, e.g., United States v.
Williams, 690 F.3d 1056, 1068-69 (8th Cir. 2012); United States
v. Riggans, 254 F.3d 1200, 1203-04 (10th Cir. 2001).

The reasoning behind those decisions is sound:  the
trial court has first-hand experience of the evidence presented
at trial, and is fully able without additional effort to
determine the facts underlying the conviction.  This stands in
contrast to past convictions, where an "ad hoc mini-trial,"

separate and distinct from the trial just had, is required to inquire about the facts of the past conviction.  <u>Riggans</u>, 254 F.3d at 1203-04 (quoting <u>United States v. Walker</u>, 903 F.2d 789, 794 (10th Cit. 1991).  The Court recognized the approach to be the better one for the RICO conspiracy at hand, and explained its reasoning when sentencing one of Canalichio's coconspirators, Joseph Massimino.  <u>See</u> <u>United States v. Massimino</u>, No. 09-CR-496-04, ECF No. 1425 at 33-38 (Sentencing transcript).

As with Canalichio's coconspirator, Massimino, the Court declined to apply the modified categorical approach because neither the Supreme Court nor the Third Circuit had announced a rule stating specifically how to analyze convictions for RICO conspiracies.[3]  ECF No. 1427 at 53.  Nevertheless, it is clear that this Court could have applied the modified categorical approach.  "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."  <u>United States v. Santos</u>, 553 U.S. 507, 514

---

[3]     The Court notes that the Third Circuit has applied the modified categorical approach to an instant conviction of Hobbs Act robbery.  <u>See</u> <u>United States v. Robinson</u>, 844 F.3d 137, 141-44 (3d Cir. 2016).  Judge Roth, the author of the opinion in <u>Robinson</u>, later cogently and succinctly explained the rationale of the categorical approach and how subsequent Supreme Court decisions have only applied it to prior convictions, not instant convictions.  <u>See</u> <u>United States v. Lewis</u>, 720 F. App'x 111, 117-20 (3d Cir.) (Roth, J., concurring), <u>cert. denied</u>, 138 S. Ct. 2013 (2018).

(2008).  Yet, simple ambiguity is not the test.  As the Supreme
Court has explained, "most statutes are ambiguous to some
degree," and so application of the rule requires "a grievous
ambiguity or uncertainty in the statute."  Dean v. United
States, 556 U.S. 568, 577 (2009) (quoting Muscarello v. United
States, 524 U.S. 125, 138-39 (1998).  Evidently, because other
courts have applied the modified categorical approach to all
flavors of instant convictions, there is no per se rule against
doing so.

There was no way for Ms. Grasso to know before the
case proceeded through trial that the Court would opt to apply
the rule of lenity in this case.

To be clear, the Court, the Government, and the U.S.
Probation Service all found that Canalichio's RICO offenses
were, in fact, crimes of violence, and therefore had the Court
applied the modified categorical approach, Canalichio would have
been deemed a career offender.  ECF No. 1427 at 54-55.  The
Government was adamant that Canalichio was a career offender and
would not agree to a plea deal in which he was not a career
offender.  Nevertheless, despite having the option of not
entering a plea deal with the Government, Canalichio decided not
to make an open plea, even though he had been advised that the
Court would decide his status, not the Government.  ECF NO. 1873
at 25-27.

31

### 3. There is no prejudice from any failure by trial counsel

The Court finds that Canalichio's trial counsel was not ineffective, and so the Court does not need to resolve whether there is any prejudice. In any event, Canalichio makes an apples-to-oranges argument about the prejudice he has experienced. He argues that his exposure for an open plea was up to 105 months as opposed to 210 months. See ECF No. 1806, Rider to Motion ¶ 99. Yet the difference between these sentences arises not from making an open plea, but from the Court's decision not to sentence Canalichio as a career offender. The Court's career-offender sentencing decision was made independently of whether Canalichio elected to go to trial (as he did) or make an open plea.

Canalichio overlooks that the prejudice he alleges arises from his informed decision not to make an open plea. Canalichio was aware that pleading guilty carries a reduction in sentence from one that would be imposed after a trial. Indeed, the reduction in the sentence for making an open plea is virtually the same whether career offender status applies or does not apply: career offender - 240 months vs. 210 months; non-career offender - 137 months vs. 105. Thus, there was no prejudice arising from Ms. Grasso's advice concerning his status as a career offender.

### C.   Conclusion

Canalichio has failed to show that Ms. Grasso was ineffective.  He was advised of the option and benefits of an open plea and that the Court would make the ultimate sentencing determination.

## VI.  CERTIFICATE OF APPEALABILITY

When a court issues a final order denying a § 2255 motion, it must also decide whether to issue a certificate of appealability.  Such a certificate "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Pabon v. Mahanoy, 654 F.3d 385, 393 (3d Cir. 2011) (quoting Miller-El v. Cockrell, 537 U.S. 322, 327 (2003)).

Here, Canalichio has not made a sufficient showing that reasonable jurists could disagree or that the issues should be pursued further, so the Court will not issue a certificate of appealability.

## VII. CONCLUSION

For the foregoing reasons, the Court finds that Canalichio's arguments are without merit.  As to Ground One,

Canalichio's trial counsel's performance did not fall below the requirements imposed by the Constitution.  As to Ground Two, Canalichio's trial counsel suffered no conflicts arising from her representation of Canalichio at trial and on appeal.  As to Ground Three, trial counsel properly advised Canalichio of the option and benefits of an open plea, and that sentencing is committed to the sound discretion of the court.

The Court denies the § 2255 Motion on all grounds and denies issuing a certificate of appealability.